**[Cite as *In re J.H.*, 2021-Ohio-4283.]**

STATE OF OHIO          )                IN THE COURT OF APPEALS
                              )ss:           NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

IN RE: J. H.                              C.A. No.     29970

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 20 02 0116

DECISION AND JOURNAL ENTRY

Dated: December 8, 2021

SUTTON, Judge.

{¶1}　Appellant, K.L. ("Mother") appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her minor child and placed the child in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2}　Mother is the biological mother of J.H., born September 1, 2006. CSB has been unable to identify the child's biological father. Mother also has adult children who are not parties to this appeal.

{¶3}　On February 6, 2020, CSB filed a complaint, alleging that J.H. was an abused, neglected, and dependent child because the agency had received several reports about then 13-year-old J.H.'s behavioral problems and Mother's inability or unwillingness to supervise the child. During the previous two months, CSB had received at least four intake referrals involving

this child. On one occasion, Mother had reported to the police that J.H. was missing and, when the police found J.H., they could not locate Mother. On another occasion, Mother informed CSB personnel that she could not control the child's behavior and wanted nothing to do with him.

{¶4} CSB would later learn that, during the past several years, Mother often left J.H. with other adults for extended periods of time or at home alone and that J.H. often ran away from home. Although CSB had not filed any prior juvenile court cases pertaining to J.H., it had received approximately 40 intake referrals pertaining to him and his older siblings, who are now adults. During 2018 and 2019, J.H. was removed from Mother's home multiple times pursuant to Juv.R. 6.

{¶5} The juvenile court adjudicated J.H. a dependent child and later placed him in the temporary custody of CSB. The case plan focused primarily on mental health treatment for both J.H. and Mother. J.H. engaged in individual counseling and psychiatric treatment throughout this case and his behavior, emotional state, and school performance significantly improved. Mother, however, engaged in counseling only sporadically and failed to work with her counselor on how to improve her relationship with J.H. Throughout this case, Mother blamed J.H.'s removal from her custody on the child's behavioral problems and did not gain any insight into how she may have contributed to the child's removal from the home. Mother insisted that she did not need any case plan services.

{¶6} On October 20, 2020, CSB moved to suspend Mother's visits with J.H., alleging that: Mother had missed more than half of her scheduled visits with J.H.; Mother and J.H. did not communicate much during the visits; after CSB increased the length of the visits from one hour to two hours, Mother asked that the visits be reduced to one hour; J.H. had repeatedly voiced his

opposition to visiting Mother; and the child's counselor and the guardian ad litem believed that suspending visits was in the best interest of J.H. Visitation was suspended shortly afterward.

{¶7} CSB later moved for permanent custody of J.H., alleging that J.H. could not be returned to Mother's custody within a reasonable time or should not be returned to her and that permanent custody was in the child's best interest. R.C. 2151.414(B)(1)(a). Following a hearing on the motion, the trial court terminated parental rights and placed J.H. in the permanent custody of CSB. Mother appeals and raises two assignments of error, which will be addressed together because they are closely related.

II.

**ASSIGNMENT OR ERROR I**

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT TERMINATED THE PARENTS' RIGHTS AND PLACED THE CHILD IN THE PERMANENT CUSTODY OF [CSB] WHEN THE AGENCY DID NOT COMPLY WITH COURT ORDERS AND PROVIDE REASONABLE REUNIFICATION[] EFFORTS BY PROVIDING A REFERRAL FOR FAMILY COUNSELING.

**ASSIGNMENT OR ERROR II**

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT GRANTED PERMANENT CUSTODY AND SHOULD HAVE GRANTED A SIX-MONTH EXTENSION, [AS ITS JUDGMENT WAS] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶8} Mother's assignments of error challenge the merits of the trial court's permanent custody decision. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent

three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶9} The trial court found that J.H. could not be placed with Mother within a reasonable time or should not be placed with her because Mother failed to substantially remedy the conditions that caused J.H. to be placed outside the home and, alternatively, that Mother demonstrated a lack of commitment to J.H. *See* R.C. 2151.414(B)(1)(a); 2151.414(E)(1); and 2151.414(E)(4). The court also found that permanent custody was in the best interest of J.H. Mother does not directly dispute the evidence supporting the trial court's findings, as it was not disputed at the hearing that the parent-child relationship between Mother and J.H. had deteriorated to the point that J.H. no longer wanted to live with Mother or even see or speak to her.

{¶10} Mother's defense to the permanent custody motion at the hearing and again on appeal is that, although she attempted to work toward reunification with J.H., she was prevented from doing so by circumstances that were beyond her control. Specifically, she asserts that she was unable to visit J.H. or work toward repairing her relationship with him because of (1) health restrictions caused by the Covid-19 pandemic; and (2) CSB's failure to comply with a specific

requirement of the case plan and a subsequent court order that CSB arrange for her to have family counseling with J.H.

{¶11} Although Mother purports to base the second part of her argument on whether CSB made "reasonable efforts" to reunify her with J.H., her argument is not actually an argument about the reasonableness of the agency's reunification efforts. "Reasonable efforts" is a broad term used throughout R.C. Chapter 2151, but is not defined by statute. The Ohio Supreme Court has explained that the term "reasonable efforts" broadly refers to "[t]he state's efforts to resolve the threat to the child before removing the child or to permit the child to return home after the threat is removed[.]'" *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 28, quoting Crossley, *Defining Reasonable Efforts: Demystifying the State's Burden Under Federal Child Protection Legislation*, 12 B.U.Pub.Int.L.J. 259, 260 (2003).

{¶12} Mother does not challenge the agency's overall efforts to assist her in working toward reunification. Instead, she asserts that CSB deliberately impeded her reunification efforts by disregarding an explicit order of the court. According to Mother, CSB failed to comply with an order of the trial court that it provide Mother and J.H. with family counseling. We will address each of Mother's defenses separately.

**Covid-19 Health Restrictions**

{¶13} Mother begins by arguing that she was prevented from having contact with J.H. for several months during this case because Covid-19 health restrictions precluded in-person visits with J.H. and she did not have the capability to participate in Zoom video calls. Mother asserts in her brief that Covid-19 restrictions prevented in-person visits for nearly four months. The only evidence presented at the hearing, however, was that Mother was unable to visit J.H. in person for approximately two months at the beginning of the pandemic. In-person visits

resumed during June 2020. Moreover, when Mother was permitted to see J.H. in person, she attended less than half of the scheduled visits and she and J.H. had only "minimal" interaction.

{¶14} As noted above, CSB later increased Mother's weekly visits from one hour to two hours, but Mother asked that the visits be decreased again to one hour per week. Mother offered no explanation for the change. Mother's visits were eventually suspended because of Mother's lack of attendance and active participation in the visits, the child's expressed wishes, and the recommendations of the child's counselor and the guardian ad litem. The evidence demonstrated that Mother's lack of interaction with J.H. was primarily the result of her own lack of effort to see him, not the health restrictions caused by the Covid-19 pandemic.

### Family Counseling with J.H.

{¶15} Next, Mother argues that she was prevented from working toward reunification with J.H. because she was never able to engage in family counseling with him to work through their differences. She maintains that CSB violated the case plan and a court order by failing to provide them with family counseling. Although Mother asserts that family counseling was mandated in this case, the record reveals that any requirement for family counseling was left to the discretion of the counselors for Mother and J.H.

{¶16} The case plan, which became binding upon all parties when it was adopted, required that Mother obtain a mental health assessment and follow all treatment recommendations, "including, but not limited to, individual, family, and/or group counseling[.]" *See* R.C. 2151.412(F)(1). A subsequent order of the trial court required CSB to arrange for Mother and J.H. to have family counseling "depending upon the recommendations of their counselors." The evidence at the hearing was clear, however, that neither counselor had recommended family counseling.

{¶17} Mother's counselor testified that Mother did not begin counseling until several months after the case plan was adopted. Moreover, the counselor had recommended that Mother engage in counseling for one to two hours per week, but Mother attended sessions only sporadically and rarely participated for a full one to two hours. Mother never spoke to her counselor about her involvement with CSB or her problems communicating with J.H. Mother's counselor explained that Mother's participation was "so inconsistent" that she and Mother had to reacquaint themselves and establish a rapport every time they had a session. According to Mother's counselor, it was essentially like starting over again each time they met.

{¶18} When the counselor spoke to Mother about her lack of participation, Mother responded that she would engage in counseling more consistently when she felt like opening up. Because Mother attended counseling sessions infrequently, she had not made much progress and would likely be terminated by the agency for lack of participation. The counselor testified that she did not recommend family counseling because of Mother's lack of participation.

{¶19} The child's counselor testified that Mother never reached out to him to discuss family counseling with J.H. He also had not spoken to Mother's counselor because Mother refused to sign a release. The child's counselor had not recommended family counseling because J.H. did not want to talk about Mother or have counseling with her. Because neither counselor recommended family counseling between Mother and J.H., CSB had no obligation to arrange it.

{¶20} Mother has failed to demonstrate any merit to her defenses to the permanent custody motion. Consequently, her first and second assignments of error are overruled.

III.

**{¶21}** Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

HENSAL, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

ANGELINA GINGO, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

MICHAEL GOEBL, Guardian ad Litem.